IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

LEWIS R. FOX,

      Petitioner,

    v.

WARDEN, BELMONT
CORRECTIONAL INSTITUTION,

      Respondent.

CASE NO. 2:19-CV-00901
JUDGE JAMES L. GRAHAM
Magistrate Judge Kimberly A. Jolson

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, has filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Petition, Respondent's Motion to Dismiss, Petitioner's Response in Opposition, Respondent's Reply, and the exhibits of the parties. For the reasons that follow, the Undersigned **RECOMMENDS** that Respondent's Motion to Dismiss (Doc. 5) be **DENIED**; that Petitioner's unopposed Motion to Deem Exhausted or Excused (Doc. 8) be **GRANTED**; and that Respondent be directed to submit a supplemental response to the Petition.

### I.    FACTS AND PROCEDURAL HISTORY

Petitioner challenges his March 27, 2017, convictions after a jury trial in the Franklin County Court of Common Pleas on two counts of felonious assault with firearm specifications. The Ohio Tenth District Court of Appeals summarized the facts and procedural history of the case as follows:

> {¶ 2} By indictment filed November 13, 2015, plaintiff-appellee, State of Ohio, charged Fox with two counts of felonious assault in violation of R.C. 2903.11, with three-year firearm specifications. Fox pleaded not guilty and the matter proceeded to a jury trial in January 2017. As pertinent to this appeal, the following evidence was presented at trial.

{¶ 3} Mary Griffin testified as follows. During the evening of October 29, 2015, Mary Griffin and her grandmother, Mary Robinson, drove to Elaine Robinson's residence. When they arrived, Elaine opened the door and they all talked, with Mary Griffin and Mary Robinson standing just outside the front door.

At some point, Fox came down from the upstairs of the residence, and "some words were exchanged" between Mary Griffin and Fox. (Tr. Vol. II at 160.) Fox called Mary Griffin and Mary Robinson "bitch[es]," and said if they "didn't move off his porch that he was going to shoot" them. (Tr. Vol. II at 160.) Fox was only a few feet away from Mary Griffin as they verbally confronted each other. Mary Griffin heard two or three gunshots and then realized she had been shot in her upper thigh. Mary Griffin did *227 not see the firearm in Fox's hand prior to hearing the gunshots, but she observed Fox raise his arm when the shots were fired. Fox had pointed the gun at Mary Griffin's leg. Mary Griffin denied lunging at or touching Fox before the shooting. Mary Robinson was standing close behind Mary Griffin at the time of the shooting.

{¶ 4} Mary Robinson testified as follows. On the day of the shooting, she and Mary Griffin intended to pick up Elaine Robinson from her home because she was having problems with her boyfriend, Fox. After they arrived at Elaine's residence, Elaine told them that Fox would not let her go with them. Elaine called for Fox, and when he descended the stairs he was angry and possibly drunk. Fox said, "I'm sick of you bitches." (Tr. Vol. II at 222.) Mary Robinson saw Fox's right "hand coming up," and then she heard one or two gunshots. (Tr. Vol. II at 213.) Fox was pointing the weapon at Mary Griffin. Prior to the weapon being discharged, Mary Robinson did not see Mary Griffin touch Fox in any manner, but they were in close proximity to each other. Mary Robinson was within arm's reach of Mary Griffin when Fox fired the shots. Fox "didn't make any threats * * * He just shot [Mary Griffin]." (Tr. Vol. II at 236.) No bullet struck Mary Robinson.

{¶ 5} Elaine Robinson, who was called as a witness on Fox's behalf, testified as follows. Fox and Elaine were living together on the day of the shooting. On that day, Mary Griffin and Mary Robinson arrived at Elaine and Fox's residence upset because of statements Fox had made regarding Mary Robinson. Elaine called for Fox and told him that "Mary and them are at the door." (Tr. Vol. III at 350.) Fox came down the stairs and to the front door. Elaine did not see Fox carrying a weapon until she heard two gunshots. Fox did not point the weapon at anyone.

When Fox fired the weapon, he was falling backward in response to Mary Griffin moving her hands toward Fox. Elaine characterized the shooting as being an accidental consequence of Fox stumbling backward. Elaine also testified that she told the police after the shooting that Fox shot downward at the porch to scare away Mary Griffin and Mary Robinson.

{¶ 6} Fox testified on his own behalf. At approximately 8:00 p.m. on the day of the shooting, Fox was upstairs at his residence when he heard loud voices downstairs. Fox heard someone screaming in anger and then heard Elaine call for him in a distressed manner. Because he was concerned that there was an intruder in the house, he grabbed a gun from his bedroom closet and brought it with him down the stairs. Holding the gun hidden behind his leg with his finger on the trigger, Fox stood in the doorway to the home and told Mary Griffin and Mary Robinson that they needed to leave. Mary Griffin then "lunged" at him like she was going to grab him. (Tr. Vol. III at 446.) Fox testified that he accidentally shot the firearm twice. Fox "stumbled back * * * and the firearm just discharged." (Tr. Vol. III at 446.) He "even [saw] the fire shoot out twice, shot twice." (Tr. Vol. III at 447.) He did not either raise the gun or shoot at the ground on purpose. After the weapon fired twice, Fox dropped it on a chair inside the house. When asked how the firearm discharged, Fox explained, "I guess I squeezed the trigger or something. You know how you're—an excited moment. I mean, it surprised me." (Tr. Vol. III at 457.)

{¶ 7} After the shooting, and based on information Fox provided, police recovered a five-shot revolver in the kitchen of Elaine and Fox's residence. Two of the rounds were spent, and the other three were unfired. Columbus Division of Police Detective Steven Miller, who interviewed Fox on the night of the shooting, testified *228 that the gun recovered from the scene of the shooting was a "double-action" firearm. (Tr. Vol. III at 288.) For this type of firearm, the hammer must be pulled back with a squeeze or pull of the trigger in order to fire each bullet. The parties stipulated that Mary Griffin sustained an injury consistent with a single gunshot that entered her right thigh and exited her right buttock at a down to up trajectory.

{¶ 8} At the conclusion of trial, Fox's counsel requested that the trial court instruct the jury on the offense of negligent assault in addition to instructing the jury on the charged offense of felonious assault. The trial court declined to give the requested negligent assault instruction, and the jury found Fox guilty on both counts of felonious assault with firearm specifications. The trial court sentenced Fox to a total of ten years in prison. Fox timely appeals.

II. Assignments of Error

{¶ 9} Fox assigns the following errors for our review:

[1.] The trial court erred and deprived appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article One Section Ten of the Ohio Constitution by finding him guilty of felonious assault as those verdicts were not supported by sufficient evidence and was also against the weight of the evidence.

3

> [2.] The trial court abused its discretion by not instructing the jury on the offense of negligent assault as a lesser included offense of felonious assault.

*State v. Fox*, 106 N.E.3d 224, 226-28 (Ohio 2018). On February 8, 2018, the appellate court affirmed the judgment of the trial court. *Id*. On May 23, 2018, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Fox*, 152 Ohio St.3d 1484 (Ohio 2018).

On March 23, 2018, Petitioner filed an application for reopening of the appeal pursuant to Ohio Appellate Rule 26(B). (Doc. 4, PAGEID # 225). On May 31, 2018, the appellate court denied the Rule 26(B) application due to Petitioner's failure to comply with the sworn statement requirement of Rule 26(B)(2)(d). (PAGEID # 263). On August 7, 2018, the appellate court denied Petitioner's motion for reconsideration. (PAGEID # 280). On August 15, 2018, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Fox*, 153 Ohio St.3d 1460 (Ohio 2018).

On November 16, 2017, Petitioner filed a Petition to Vacate or Set Aside Judgment of Conviction in the state trial court, asserting the denial of the effective assistance of trial counsel based on his attorney's failure to advise him to accept the government's plea offer, failure to investigate, call expert witnesses, argue for the lesser included offense of assault, prepare Petitioner or Elaine Robinson for trial, play portions of the statements of Petitioner and other witnesses, and failure to preserve Petitioner's right to a speedy trial. (PAGEID # 360-73). That action apparently remains pending in the state trial court.

On March 12, 2019, Petitioner filed this pro se habeas corpus Petition. He asserts that the evidence is constitutionally insufficient to sustain his convictions and that his convictions are against the manifest weight of the evidence (claim one); that he was denied his right to the lesser included offense of assault (claim two); that he was denied his right to the effective assistance of appellate counsel (claim three); and that he was denied the right to the effective assistance of trial

and appellate counsel (claim four). It is the position of the Respondent that this action should be dismissed without prejudice as unexhausted.

## II. EXHAUSTION

The Antiterrorism and Effective Death Penalty Act ("AEDPA") requires a petitioner to exhaust his claims in the state courts before presenting them in federal court. 28 U.S.C. § 2254(b); *see Rockwell v. Yukins*, 217 F.3d 421, 423 (6th Cir. 2000). If a habeas petitioner has the right under state law to raise a claim by any available procedure, the claim is not exhausted. 28 U.S.C. § 2254(b), (c). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the exhaustion requirement. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). A habeas petitioner bears the burden of demonstrating that exhaustion of the available state court remedies with respect to the claims presented for federal habeas review. *Prather v. Rees*, 822 F.2d 1418, 1420 n.3 (6th Cir. 1987).

## III. APPLICATION

Petitioner asserts in claim four that he was denied the effective assistance of trial counsel because his attorney failed to advise him to accept the government's plea offer, failed to investigate, failed to call expert witnesses, and failed to pursue multiple lesser-included offenses. (*Petition*, Doc. 1, PAGEID # 10). Petitioner raised these same claims in his November 16, 2017, state post conviction petition. That action remains pending in the state trial court. (Doc. 4, PAGEID # 360-73).

Respondent therefore has filed a Motion to Dismiss this action without prejudice as unexhausted. (Doc. 5). It is the Respondent's position that the Court should dismiss this action as unexhausted pending resolution of state post-conviction proceedings, and that the record does

not support a stay of proceedings under *Rhines v. Weber*, 544 U.S. 269 (2005) (where the one-year statute of limitations provided for under 28 U.S.C. § 2244(d) may bar a habeas petitioner from re-filing , a federal court may grant a stay if the petitioner has "good cause" for failing to exhaust his claims and those claims do not plainly lack merit). Petitioner, however, opposes the dismissal of this action as unexhausted. (*Motion to Deem Exhausted or Excused*, Doc. 8). At this point in time, his state post-conviction petition has been awaiting a ruling from the state trial court more than one year and eight months. Petitioner therefore requests that his failure to exhaust state court remedies be excused based on the trial court's inordinate delay in adjudicating his claims. The Respondent has not filed a response to Petitioner's request.

Moreover, the record does not reflect grounds for issuance of a stay under *Rhines.* It does not appear that the statute of limitations has expired or that Petitioner necessarily will be barred from re-filing his habeas corpus petition upon resolution of state post-conviction proceedings and exhaustion of his claims. Still, a state court's "inordinate delay" in adjudicating a petitioner's claims will justify excusal of the exhaustion requirement. *Phillips v. White*, 851 F.3d 567, 576 (6th Cir. 2017) (citing *Workman v. Tate*, 957 F.2d 1339, 1344 (6th Cir. 1992); *see also Allen v. Ohio*, No. 1:13-cv-19, 2014 WL 309049, at *2 (S.D. Ohio Jan. 28, 2014) (the exhaustion requirement may be excused based on inordinate delay where "the pursuit of an available state remedy 'would be futile or unable to afford the petitioner the relief he seeks.'" (citing *Fazzini v. Northeast Ohio Corr. Ctr.*, 473 F.3d 229, 235–36 (6th Cir.2006); *Turner v. Bagley*, 401 F.3d 718, 724–26 (6th Cir. 2005) (and cases cited therein); *Seay v. Warden, Oakwood Corr. Facility*, No. 1:10cv828, 2011 WL 4802814, at *3–4 (S.D. Ohio Apr.26, 2011) (Bowman, M.J.) (Report & Recommendation), *adopted*, 2011 WL 4809220 (S.D. Ohio Oct.11, 2011) (Spiegel, J.)

(excusing exhaustion requirement and denying motion to dismiss on exhaustion grounds in case where pending state post-conviction petition had not been ruled on for over fourteen months).

Here, as discussed, on November 17, 2017, Petitioner filed his petition for post-conviction relief in the state trial court. According to the docket of the Franklin County Clerk, on November 27, 2017, the State filed an Answer and Motion to Dismiss. To date, no decision appears to be forthcoming. Further, "[i]n Ohio, after final judgment is entered in a case, the 'trial court's failure to rule on a motion will implicitly be considered a denial.'" *Seay*, 2011 WL 4802814, at *3 (citing *State v. Patrick*, 163 Ohio App.3d 666, 839 (Ohio Ct. App. 2005) (and cases cited therein); *Koslen v. Chattman*, No. 78781, 2001 WL 1035192, at *9 (Ohio Ct. App. Sept. 6, 2001) ("failure to rule is an implicit denial only after a final judgment is entered"). Thus, the trial court's delay of more than twenty months in ruling may well qualify as an "implicit denial" of the petition. *Id*. In view of the foregoing, the Undersigned concludes that the trial court's inordinate delay in ruling on Petitioner's post-conviction petition warrants excusal of the exhaustion requirement.

## IV. RECOMMENDATION

For the foregoing reasons it is **RECOMMEND** that Respondent's Motion to Dismiss (Doc. 5) be **DENIED**; that Petitioner's unopposed Motion to Deem Exhausted or Excused (Doc. 8) be **GRANTED**; and that Respondent be directed to submit a supplemental response to the Petition.

### Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting

authority for the objection(s).  A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. § 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation.  See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

Date:  August 30, 2019               /s/ Kimberly A. Jolson
                                     KIMBERLY A. JOLSON
                                     UNITED STATES MAGISTRATE JUDGE