**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**LEWIS R. FOX,**

      **Petitioner,**

      **v.**

**WARDEN, BELMONT
CORRECTIONAL INSTITUTION,**

      **Respondent.**

                    **CASE NO. 2:19-CV-00901
JUDGE JAMES L. GRAHAM
Magistrate Judge Kimberly A. Jolson**

**ORDER and
REPORT AND RECOMMENDATION**

Petitioner, a state prisoner, has filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Petition, Respondent's Return of Writ, Petitioner's Reply, and the exhibits of the parties. For the reasons that follow, the Undersigned **RECOMMENDS** that this action be dismissed. And Petitioner's request for an evidentiary hearing is **DENIED**.

## I. FACTS AND PROCEDURAL HISTORY

Petitioner challenges his March 27, 2017, convictions after a jury trial in the Franklin County Court of Common Pleas on two counts of felonious assault with firearm specifications. The Ohio Tenth District Court of Appeals summarized the facts and procedural history of the case as follows:

> {¶ 2} By indictment filed November 13, 2015, plaintiff-appellee, State of Ohio, charged Fox with two counts of felonious assault in violation of R.C. 2903.11, with three-year firearm specifications. Fox pleaded not guilty and the matter proceeded to a jury trial in January 2017. As pertinent to this appeal, the following evidence was presented at trial.

> {¶ 3} Mary Griffin testified as follows. During the evening of October 29, 2015, Mary Griffin and her grandmother, Mary Robinson, drove to Elaine Robinson's

residence. When they arrived, Elaine opened the door and they all talked, with Mary Griffin and Mary Robinson standing just outside the front door.

At some point, Fox came down from the upstairs of the residence, and "some words were exchanged" between Mary Griffin and Fox. (Tr. Vol. II at 160.) Fox called Mary Griffin and Mary Robinson "bitch[es]," and said if they "didn't move off his porch that he was going to shoot" them. (Tr. Vol. II at 160.) Fox was only a few feet away from Mary Griffin as they verbally confronted each other. Mary Griffin heard two or three gunshots and then realized she had been shot in her upper thigh. Mary Griffin did not see the firearm in Fox's hand prior to hearing the gunshots, but she observed Fox raise his arm when the shots were fired. Fox had pointed the gun at Mary Griffin's leg. Mary Griffin denied lunging at or touching Fox before the shooting. Mary Robinson was standing close behind Mary Griffin at the time of the shooting.

{¶ 4} Mary Robinson testified as follows. On the day of the shooting, she and Mary Griffin intended to pick up Elaine Robinson from her home because she was having problems with her boyfriend, Fox. After they arrived at Elaine's residence, Elaine told them that Fox would not let her go with them. Elaine called for Fox, and when he descended the stairs he was angry and possibly drunk. Fox said, "I'm sick of you bitches." (Tr. Vol. II at 222.) Mary Robinson saw Fox's right "hand coming up," and then she heard one or two gunshots. (Tr. Vol. II at 213.) Fox was pointing the weapon at Mary Griffin. Prior to the weapon being discharged, Mary Robinson did not see Mary Griffin touch Fox in any manner, but they were in close proximity to each other. Mary Robinson was within arm's reach of Mary Griffin when Fox fired the shots. Fox "didn't make any threats * * * He just shot [Mary Griffin]." (Tr. Vol. II at 236.) No bullet struck Mary Robinson.

{¶ 5} Elaine Robinson, who was called as a witness on Fox's behalf, testified as follows. Fox and Elaine were living together on the day of the shooting. On that day, Mary Griffin and Mary Robinson arrived at Elaine and Fox's residence upset because of statements Fox had made regarding Mary Robinson. Elaine called for Fox and told him that "Mary and them are at the door." (Tr. Vol. III at 350.) Fox came down the stairs and to the front door. Elaine did not see Fox carrying a weapon until she heard two gunshots. Fox did not point the weapon at anyone.

When Fox fired the weapon, he was falling backward in response to Mary Griffin moving her hands toward Fox. Elaine characterized the shooting as being an accidental consequence of Fox stumbling backward. Elaine also testified that she told the police after the shooting that Fox shot downward at the porch to scare away Mary Griffin and Mary Robinson.

{¶ 6} Fox testified on his own behalf. At approximately 8:00 p.m. on the day of the shooting, Fox was upstairs at his residence when he heard loud voices downstairs. Fox heard someone screaming in anger and then heard Elaine call for him in a distressed manner. Because he was concerned that there was an intruder in the

house, he grabbed a gun from his bedroom closet and brought it with him down the stairs. Holding the gun hidden behind his leg with his finger on the trigger, Fox stood in the doorway to the home and told Mary Griffin and Mary Robinson that they needed to leave. Mary Griffin then "lunged" at him like she was going to grab him. (Tr. Vol. III at 446.) Fox testified that he accidentally shot the firearm twice. Fox "stumbled back * * * and the firearm just discharged." (Tr. Vol. III at 446.) He "even [saw] the fire shoot out twice, shot twice." (Tr. Vol. III at 447.) He did not either raise the gun or shoot at the ground on purpose. After the weapon fired twice, Fox dropped it on a chair inside the house. When asked how the firearm discharged, Fox explained, "I guess I squeezed the trigger or something. You know how you're—an excited moment. I mean, it surprised me." (Tr. Vol. III at 457.)

{¶ 7} After the shooting, and based on information Fox provided, police recovered a five-shot revolver in the kitchen of Elaine and Fox's residence. Two of the rounds were spent, and the other three were unfired. Columbus Division of Police Detective Steven Miller, who interviewed Fox on the night of the shooting, testified that the gun recovered from the scene of the shooting was a "double-action" firearm. (Tr. Vol. III at 288.) For this type of firearm, the hammer must be pulled back with a squeeze or pull of the trigger in order to fire each bullet. The parties stipulated that Mary Griffin sustained an injury consistent with a single gunshot that entered her right thigh and exited her right buttock at a down to up trajectory.

{¶ 8} At the conclusion of trial, Fox's counsel requested that the trial court instruct the jury on the offense of negligent assault in addition to instructing the jury on the charged offense of felonious assault. The trial court declined to give the requested negligent assault instruction, and the jury found Fox guilty on both counts of felonious assault with firearm specifications. The trial court sentenced Fox to a total of ten years in prison. Fox timely appeals.

II. Assignments of Error

{¶ 9} Fox assigns the following errors for our review:

[1.] The trial court erred and deprived appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article One Section Ten of the Ohio Constitution by finding him guilty of felonious assault as those verdicts were not supported by sufficient evidence and was also against the weight of the evidence.

[2.] The trial court abused its discretion by not instructing the jury on the offense of negligent assault as a lesser included offense of felonious assault.

*State v. Fox*, 106 N.E.3d 224, 226-28 (Ohio 2018). On February 8, 2018, the appellate court affirmed the judgment of the trial court. *Id*. On May 23, 2018, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Fox*, 152 Ohio St.3d 1484 (Ohio 2018).

On March 23, 2018, Petitioner filed an application for reopening of the appeal pursuant to Ohio Appellate Rule 26(B). (Doc. 4, PAGEID # 225). On May 31, 2018, the appellate court denied the Rule 26(B) application based on Petitioner's failure to comply with the sworn statement requirement of Rule 26(B)(2)(d). (PAGEID # 263). Then, on August 7, 2018, the appellate court denied Petitioner's motion for reconsideration. (PAGEID # 280). Next, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Fox*, 153 Ohio St.3d 1460 (Ohio 2018).

On November 16, 2017, Petitioner filed a Petition to Vacate or Set Aside Judgment of Conviction in the state trial court, asserting the denial of the effective assistance of trial counsel based on his attorney's failure to advise him to accept the government's plea offer, failure to investigate, call expert witnesses, argue for the lesser included offense of assault, prepare Petitioner or Elaine Robinson for trial, play portions of the statements of Petitioner and other witnesses, and failure to preserve Petitioner's right to a speedy trial. (PAGEID # 360–73). On September 5, 2019, the trial court issued a Decision and Entry denying Petitioner's claims. (Doc. 10-1, PAGEID # 1062). That appeal apparently remains pending.

On March 12, 2019, Petitioner filed this pro se habeas corpus petition. He asserts that the evidence is constitutionally insufficient to sustain his convictions and that his convictions are against the manifest weight of the evidence (claim one); that he was denied his right to a jury instruction on the lesser included offense of assault (claim two); that he was denied his right to the effective assistance of appellate counsel (claim three); and that he was denied the right to the

effective assistance of trial and appellate counsel (claim four).  Petitioner has withdrawn his unexhausted claim of the denial of the effective assistance of trial counsel.  (Docs. 16, 17).

It is the position of the Respondent that Petitioner's remaining claims fail to provide a basis for relief.

## II.  STANDARD OF REVIEW

Because Petitioner seeks habeas relief under 28 U.S.C. § 2254, the Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this case.  The United States Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy."  *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA...imposes a highly deferential standard for evaluating state–court rulings, and demands that state-court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

AEDPA limits the federal courts' authority to issue writs of habeas corpus and forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The United States Court of Appeals for the Sixth Circuit has explained the meaning of the standards found in § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies the law or bases its decision on an unreasonable determination of the facts, in light of the record before the state court. *Harrington v. Richter*, 562 U.S. 86, 100, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011); *Williams*, 529 U.S. at 412–13, 120 S.Ct. 1495.

*Lang v. Bobby*, 889 F.3d 803, 810 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 798, (2019).

Moreover, under § 2254(d)(2), a state court's factual determination is not "unreasonable" merely because the federal habeas court would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Instead, a state court's factual findings are "only unreasonable where they are 'rebutted by clear and convincing evidence' and do not have support in the record." *Moritz v. Woods*, No. 16-1504, 2017 WL 2241814, at *5 (6th Cir. May 22, 2017) (quoting *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted). Moreover, "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (quoting *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003) ("*Miller–El I*").

The burden of satisfying AEDPA's standards rests with the petitioner. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III. DISCUSSION

Petitioner has brought four claims.

### A. Claim One

In claim one, Petitioner asserts that the evidence is constitutionally insufficient to sustain his convictions on felonious assault and that his convictions are against the manifest weight of the evidence. This latter claim does not provide a basis for relief. *See Williams v. Jenkins*, No. 1:15cv00567, 2016 WL 2583803, at *7 (N.D. Ohio Feb. 22, 2016) (citing *Nash v. Eberlin*, 258 Fed. App'x. 761, 765, n.4 (6th Cir. 2007)); *Norton v. Sloan*, No. 1:16–cv–854, 2016 WL 525561, at *5 (N.D. Ohio Feb. 9, 2017) (citing *Ross v. Pineda*, No. 3:10–cv–391, 2011 WL 1337102, at *3 (S.D. Ohio)) ("Whether a conviction is against the manifest weight of the evidence is purely a question of Ohio law."); *see also Taylor v. Warden*, *Lebanon Corr. Inst.*, No. 2:16-cv-237, 2017 WL 1163858, at *10–11 (S.D. Ohio March 29, 2017) (same) (citations omitted). Under Ohio law, a claim that a verdict was against the manifest weight of the evidence—as opposed to one based upon insufficient evidence—requires the appellate court to act as a "thirteenth juror" and review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175 (1983); *cf. Tibbs v. Florida*, 457 U.S. 31 (1982). Because a federal habeas court does not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review, Petitioner's claim that his convictions were against the manifest weight of the evidence is not cognizable in federal habeas corpus proceedings.

As for Petitioner's claim of insufficiency of the evidence, the state appellate court rejected the argument, reasoning as follows:

{¶ 10} Fox's first assignment of error alleges that both of his felonious assault convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Sufficiency is a test of adequacy. *Id.* The relevant inquiry for an appellate court is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt. *State v. Mahone*, 10th Dist. No. 12AP-545, 2014-Ohio-1251, 2014 WL 1350969, ¶ 38, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

*** 

{¶ 13} Fox was convicted of violating R.C. 2903.11, which states in pertinent part that "[n]o person shall knowingly do either of the following: (1) Cause serious physical harm to another * * * [or] (2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon." In challenging his convictions, Fox asserts that Mary Griffin lunged at him during their confrontation, causing him to fall backward over a piece of furniture and accidentally fire the weapon. He argues that he did not have the mental state required to be convicted of felonious assault.

{¶ 14} "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). When determining whether a defendant acted knowingly, his state of mind must be determined from the totality of the circumstances surrounding the alleged crime. *State v. Ingram*, 10th Dist. No. 11AP-1124, 2012-Ohio-4075, 2012 WL 3861220, ¶ 22. Culpable mental states are frequently demonstrated through circumstantial evidence. *Id.* Evidence that a defendant fired a gun in a person's direction is sufficient evidence that the defendant acted knowingly for the purpose of a felonious assault conviction. *State v. Jefferson*, 6th Dist. No. L-16-1182, 2017-Ohio-7272, 2017 WL 3575607, ¶ 17.

{¶ 15} The evidence presented at trial reasonably demonstrated that Fox acted knowingly in causing serious physical harm to Mary Griffin and in attempting to cause physical harm to Mary Robinson by means of a deadly weapon. According to Fox's testimony, the shooting was an accident. However, even if it was not Fox's intent to injure either Mary Griffin or Mary Robinson, he fired the weapon under circumstances where the risk of injury supported the inference that he acted knowingly. Mary Griffin testified that Fox threatened to shoot her and Mary Robinson if they did not move off his porch. Fox admitted at trial that he had his finger on the trigger when he confronted Mary Griffin and Mary Robinson at the door of his residence, demonstrating he was prepared and ready to fire the weapon. Testimony at trial also showed that the trigger of the gun that he fired twice had to be squeezed for each bullet discharge with a force sufficient to pull the hammer back. Further, Fox, Mary Griffin, and Mary Robinson were all in close proximity to each other when Fox fired the shots, and both Mary Griffin and Mary Robinson

testified that Fox pointed the weapon in Mary Griffin's direction. One of the bullets struck Mary Griffin in the thigh. Additionally, testimony indicated that Mary Robinson was standing close behind Mary Griffin when Fox fired the two shots, and thus she was also in the line of fire. Considering this evidence, the jury reasonably disbelieved Fox's explanation that the shooting was an accident and convicted Fox of two counts of felonious assault.

{¶ 16} In sum, the evidence was sufficient to convict Fox of committing two counts of felonious assault, and Fox fails to show that the jury clearly lost its way and created a manifest miscarriage of justice. Because Fox's convictions were supported by sufficient evidence. . . we overrule Fox's first assignment of error.

*State v. Fox*, 106 N.E.3d at 228–30.

The Fourteenth Amendment's Due Process clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The question in a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16).

Additionally, when determining if the evidence was sufficient to support a petitioner's conviction, a federal habeas court must view the evidence in the light most favorable to the prosecution. *Wright v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson*, 443 U.S. at 319). The prosecution is not affirmatively required to "rule out every hypothesis except that of guilt." *Id.* (quoting *Jackson*, 443 U.S. at 326). Instead, "a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear

in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id.* at 296–97 (quoting *Jackson*, 443 U.S. at 326).

On top of all that, federal habeas courts must afford a "double layer" of deference to state court determinations of the sufficiency of the evidence. As explained in *Brown v. Konteh*, deference must be given, first, to the jury's finding of guilt because the standard, announced in *Jackson,* is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 567 F.3d 191, 205 (6th Cir. 2009). Second, even if a de novo review of the evidence leads to the conclusion that no rational trier of fact could have so found, a federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*; *see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). This is a substantial hurdle, one that Petitioner has failed to surmount.

Here, Petitioner argues that the state appellate court unreasonably determined that he pointed a gun in Griffin's direction because Griffin testified that she never saw the gun and Robinson testified that she was standing in a grassy area off the porch, that Petitioner never made any threats, and that he did not point the firearm in her direction. (*Reply*, Doc. 19, PAGEID # 1156-57). Additionally, Petitioner again argues that the State failed to establish that he had any intent to shoot the firearm, as the evidence equally supports his defense that he lost his balance and fired accidentally. According to Petitioner, an evidentiary hearing may establish that both shell casings were ejected from the gun at the same time, discrediting the State's evidence that he fired twice. (PAGEID # 1158).

Petitioner's arguments are not persuasive. Mary Griffin, Robinson's granddaughter, testified about the incident. She had gone with her grandmother to pick up Elaine Robinson who

had called her grandmother because she was having domestic issues with the Petitioner. (*Transcript*, Doc. 4-1, PAGEID # 562). Elaine came to the door. They did not enter the house. Petitioner came down. "He was in the front door of his apartment." They exchanged words. He said if they did not move off his porch he would shoot them. (PAGEID # 565). He said "If you don't get off my porch, I'm going to kill y'all." (PAGEID # 575). Petitioner held the gun in his right hand. She saw it after he shot her. (PAGEID # 572). Griffin stood on the step. Petitioner stood inside the doorway to the house. Griffin's grandmother stood right next to Griffin. (PAGEID # 573). Griffin heard the gunshot, moved off the porch, and realized that she had been shot. (PAGEID # 575). Petitioner raised his arm up to shoot her. (PAGEID # 582). Griffin and her grandmother were standing in close proximity when he pointed the gun. (PAGEID # 599). Griffin denied lunging at the Petitioner or making any aggressive movement towards him. (PAGEID # 612–13). Mary Robinson testified that when they arrived at the house, Elaine said that Petitioner would not let Elaine leave. (PAGEID # 617). When Petitioner came downstairs, he looked angry and drunk. He smelled of alcohol and became verbally abusive. (PAGEID # 618).

> I was still down there on the ground, and Mary was up there on the porch. And at this time, Mary stepped back. He came and got in the door. He had – his right hand was down. I turned around and looked, and I seen his hand coming up. And that's when I seen the gun, and that's when I heard the shot.
>
> . . . I couldn't believe that he would bring a gun to the door to shoot two women, and that's what he did.

(*Transcript*, Doc. 4-1, PAGEID # 618).

> I seen his right hand come up on the right side, and that's when I seen the gun, but I wasn't for sure it was a gun. I just didn't want to believe he had it, but it was a gun.

(PAGEID # 626). Griffin never touched the Petitioner. (PAGEID # 628). Mary Robinson was standing "very close" to her granddaughter when Petitioner shot her. Neither of them ever entered the home. (PAGEID # 630).

In view of this record, Petitioner has failed to rebut the presumption of correctness afforded to the factual findings of the state appellate court. The record supports the conclusion that he acted intentionally. His claim that both bullets may have ejected from the gun at one time constitutes mere speculation and is without record support. Moreover, Petitioner has no right to an evidentiary hearing in order to attempt to further develop the factual basis for his claim here. "[A] federal court's review of a state court decision under 28 U.S.C. 2254(d)(1) is strictly limited to review of the state court record[.]" *Campbell v. Warden*, *London Corr. Institution*, No. 1:14-cv-13, 2015 WL 7710761, at *4 (S.D. Ohio Nov. 30, 2015) (citing *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011)).

In sum, Petitioner has failed to establish that the state appellate court contravened or unreasonably applied federal law or based its decision on an unreasonable determination of the facts in rejecting his claim of insufficiency of the evidence. Upon review of the record, this Court agrees that, when viewing all of the evidence in the light most favorable to the prosecution, the evidence is constitutionally sufficient to sustain his convictions on felonious assault.

## B. CLAIM TWO

In claim two, Petitioner asserts that the trial court unconstitutionally refused to issue a jury instruction on the lesser-included offense of negligent assault. The state appellate court rejected this claim:

{¶ 17} Fox's second assignment of error alleges the trial court erred in not instructing the jury on the offense of negligent assault in regard to Count 1 of the indictment (Fox's alleged assault of Mary Griffin). This assignment of error lacks merit.

{¶ 18} This court reviews a trial court's refusal to instruct the jury on a lesser-included offense under the abuse of discretion standard. *State v. Coleman–Muse*, 10th Dist. No. 15AP-566, 2016-Ohio-5636, 2016 WL 4590151, ¶ 8; State v. Parnell, 10th Dist. No. 11AP-257, 2011-Ohio-6564, 2011 WL 6647293, ¶ 21–27. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Clark*, 71 Ohio St.3d 466, 470, 644 N.E.2d 331 (1994).

{¶ 19} R.C. 2903.14(A) states that "[n]o person shall negligently, by means of a deadly weapon * * * cause physical harm to another." This court has held that negligent assault, as defined by R.C. 2903.14, is a lesser-included offense of felonious assault, as defined by R.C. 2903.11(A)(2) (the provision prohibiting anyone from knowingly causing physical harm to another by means of a deadly weapon). *State v. Anderson*, 10th Dist. No. 06AP-174, 2006-Ohio-6152, 2006 WL 3365497, ¶ 38.

{¶ 20} An instruction on a lesser-included offense is required only when the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser-included offense. *Anderson* at ¶ 39, citing *State v. Carter,* 89 Ohio St.3d 593, 600, 734 N.E.2d 345 (2000); *see State v. Wine,* 140 Ohio St.3d 409, 2014-Ohio-3948, 18 N.E.3d 1207, ¶ 34 (a trial court "must give an instruction on a lesser included offense if under any reasonable view of the evidence it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense").

{¶ 21} In deciding whether to provide a lesser-included offense instruction, the trial court must consider both the state's evidence and the defense's evidence, and it must view the evidence in the light most favorable to the defendant. *Anderson* at ¶ 39; *State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, 827 N.E.2d 285, ¶ 37. An instruction on a lesser-included offense is not warranted, however, every time "some evidence" is presented to support the lesser offense. *State v. Noor*, 10th Dist. No. 13AP-165, 2014-Ohio-3397, 2014 WL 3827821, ¶ 84. The court must find "sufficient evidence" to allow a jury to reasonably reject the greater offense and find the defendant guilty on a lesser-included (or inferior degree) offense. *Id.* For example, "a defendant's own testimony that he did not intend to kill his victim does not entitle him to a lesser-included offense instruction 'if the evidence on whole does not reasonably support an acquittal on the murder offense and a conviction *231 on a lesser offense.'" *Id.*, quoting *State v. Willis*, 8th Dist. No. 99735, 2014-Ohio-114, 2014 WL 197876, ¶ 51.

{¶ 22} Therefore, the issue presented here is whether the evidence at trial supported both an acquittal as to the charged offense of felonious assault and a conviction for negligent assault. A key distinction between the offenses of felonious assault and negligent assault is that felonious assault requires a knowing mental state, whereas a negligent mental state is sufficient to establish negligent assault. *Anderson* at ¶

39. While a knowing mental state indicates awareness of the probability that one's conduct will cause a certain result or be of a certain nature, a "person acts negligently when, because of a substantial lapse from due care, the person fails to perceive or avoid a risk that the person's conduct may cause a certain result or may be of a certain nature." R.C. 2901.22(D).

{¶ 23} According to Fox's testimony, he fired the gun accidentally twice, and he argues on appeal that he lacked due care by bringing the gun with him down the stairs to confront the people at his door. Fox's trial testimony seemed to suggest his view that he lacked any culpable mental state regarding the firing of the weapon. However, having the trial court instruct the jury on the offense of negligent assault, in addition to the charged offense of felonious assault, would be inconsistent with an assertion of lack of any culpability. Rather, an acquittal would have been the appropriate outcome if in fact he lacked any culpable mental state. On appeal, Fox suggests that the discharge of the weapon was an accident caused by his negligence. He argues that his discharge of the weapon was the result of him negligently deciding to bring the weapon with him to confront Mary Griffin and Mary Robinson. Certainly, it is possible that a deviation from due care may cause an "accidental" shooting. *See, e.g., In re I.L.J.F.,* 12th Dist. No. CA2014-12-258, 2015-Ohio-2823, 2015 WL 4207135. However, Fox's decision to bring the weapon with him to confront Mary Griffin and Mary Robinson at his front door was not the basis of the felonious assault charges and his subsequent conduct demonstrated a more culpable mental state. The assaults occurred when Fox fired the weapon twice when Mary Griffin and Mary Robinson were within a few feet of him. And the undisputed evidence further demonstrated that Fox had to pull the trigger each of the two times he engaged the firing mechanism with enough force to pull the hammer back. On these facts, in view of the undisputed evidence, no reasonable jury could have found that Fox's self-asserted deviation from due care—i.e., his decision to bring the firearm with him to confront Mary Griffin and Mary Robinson—proximately caused physical harm to Mary Griffin.FN1

FN1: Contrary to the dissent's assertion, we do not suggest that it never would be appropriate to give both a negligent assault charge and a felonious assault charge to a jury. We find that, under the facts of this case, it was not an abuse of discretion for the trial court not to instruct the jury on the offense of negligent assault.

{¶ 24} Because the evidence at trial did not reasonably support both an acquittal for felonious assault and a conviction for negligent assault, the trial court did not abuse its discretion in declining to instruct the jury on negligent assault. Therefore, we overrule Fox's second assignment of error.

*State v. Fox*, 106 N.E.3d at 230-31.

This claim fails to provide Petitioner a basis for relief. "Under AEDPA, a threshold issue

is to determine whether there is 'clearly established' law governing the case." *Belton v. Woods,*

No. 5:16-cv-10647, 2017 WL 2132245, at *3 (E.D. Mich. May 17, 2017) (citing *Carey v. Musladin,* 549 U.S. 70, 74-77 (2006)). "Law is 'clearly established' when Supreme Court precedent unambiguously provides a 'controlling legal standard.'" *Id.* (citing *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007)). The Supreme Court has not held that the Constitution provides a criminal defendant in a non-death penalty case the right to a jury instruction on a lesser-included offense:

> The right to an instruction on a lesser-included offense in a noncapital case has not been clearly established by the Supreme Court. *See Parker v. Burt*, 595 Fed. Appx. 595, 605 (6th Cir. Mich. 2015). The Sixth Circuit stated, "[t]he Supreme Court . . . has never held that the Due Process Clause requires instructing the jury on a lesser included offense in a non-capital case." *McMullan v. Booker*, 761 F.3d 662, 667 (6th Cir. 2014); *see also Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001) ("[T]he Constitution does not require a lesser-included offense instruction in non-capital cases.") (citing *Bagby v. Sowders*, 894 F.2d 792, 795-97 (6th Cir. 1990) (en banc)).

*Belton v. Woods*, 2017 WL 2132245, at *4. Thus, "[t]he failure of a state trial court to instruct a jury on a lesser included offense in a non-capital case is [] not an error cognizable in federal habeas review." *Robinson v. Winn*, No. 4:16-cv-11738, 2018 WL 1522437, at *7 (E.D. Mich. March 28, 2018) (citing *Bagby v. Sowders*, 894 F. 2d 792, 797 (6th Cir.), *cert. denied*, 496 U.S. 929 (1990); *Scott v. Elo*, 302 F. 3d 598, 606 (6th Cir. 2002), *cert. denied*, 537 U.S. (2003)).

> In the absence of a further Supreme Court decision on this matter, a state court determination of whether instructions on lesser-included offenses were necessary cannot be contrary to, or an unreasonable application of, clearly established Supreme Court precedent; and thus, falls beyond the authority of a habeas court. *See McMullan v. Booker*, 761 F.3d 662, 667 (6th Cir. 2014); *Tegeler v. Renico*, 253 Fed.Appx. 521, 525 (6th Cir. 2007) (where an open question exists in Supreme Court jurisprudence as to a particular issue of law, no violation of "clearly established" federal law as determined by the Supreme Court can be shown).

*Howard v. Dewine*, No. 5:14-cv-2587, 2016 WL 2637757, at *8 (N.D. Ohio April 6, 2016). Thus, any error in jury instructions will provide relief only where the ailing instruction so infected the entire trial that the resulting conviction violates due process. *Henderson v. Kibbe*, 431 U.S. 135,

154 (1977) (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). Such are not the circumstances here. "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Id*. at 155. The appellate court did not unreasonably conclude that the facts did not support an instruction on the lesser-included offense of negligent assault in view of undisputed evidence indicating that Petitioner had to pull the trigger of the gun twice in order to engage the firing mechanism with enough force to pull the hammer back, and therefore could not have fired the gun accidentally. And claim two is without merit.

## C. Claims Three and Four

In claims three and four, Petitioner asserts that he was denied the effective assistance of appellate counsel. As discussed, on November 4, 2019, the Court granted Petitioner's request to dismiss claim four, his unexhausted claim of the denial of the effective assistance of trial counsel. (*Order*, Doc. 17). As for claim three, Respondent argues that this claim is procedurally defaulted. (Doc. 18, PAGEID # 1142–45).

### 1. Procedural Default

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. § 2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If the prisoner fails to do so, but still has an avenue open to present the claims, then the petition is subject to dismissal for failure to exhaust state remedies. *Id.*; *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971). Where a petitioner

has failed to exhaust claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. As the Supreme Court found in *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case—that is, they are "procedurally defaulted."

To determine whether procedural default bars a habeas petitioner's claim, courts in the Sixth Circuit engage in a four-part test. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also Scuba v. Brigano*, 259 F. App'x 713, 718 (6th Cir. 2007) (following the four-part analysis of *Maupin*). First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. Second, the court

must determine whether the state courts actually enforced the state procedural sanction. Third, the court must determine whether the forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Maupin*, 785 F.2d at 138. Finally, if "the court determines that a state procedural rule was not complied with and that the rule [has] an adequate and independent state ground, then the petitioner" may still obtain review of his or her claims on the merits if the petitioner establishes: (1) cause sufficient to excuse the default and (2) that he or she was actually prejudiced by the alleged constitutional error. *Id.*

Turning to the fourth part of the *Maupin* analysis, in order to establish cause, petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Constitutionally ineffective counsel may constitute cause to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). In order to constitute cause, an ineffective assistance of counsel claim generally must "'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" *Edwards*, 529 U.S. at 452 (quoting *Murray v. Carrier*, 477 U.S. 478, 479 (1986)). That is because, before counsel's ineffectiveness will constitute cause, "that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). Or, if procedurally defaulted, petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." *Edwards v. Carpenter*, 529 U.S. 446, 450–51 (2000). The Supreme Court explained the importance of this requirement:

> We recognized the inseparability of the exhaustion rule and the procedural-default doctrine in *Coleman*: "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." 501 U.S., at 732, 111 S.Ct.

> 2546, 115 L.Ed.2d 640. We again considered the interplay between exhaustion and procedural default last Term in *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), concluding that the latter doctrine was necessary to "'protect the integrity' of the federal exhaustion rule." Id., at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (quoting id., at 853, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting)). The purposes of the exhaustion requirement, we said, would be utterly defeated if the prisoner were able to obtain federal habeas review simply by "'letting the time run'" so that state remedies were no longer available. *Id.*, at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1. Those purposes would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it. In such circumstances, though the prisoner would have "concededly exhausted his state remedies," it could hardly be said that, as comity and federalism require, the State had been given a "fair 'opportunity to pass upon [his claims].'" *Id.*, at 854, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting) (emphasis added) (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)).

*Edwards*, 529 U.S. at 452–53.

If, after considering all four factors of the *Maupin* test, the court concludes that a procedural default occurred, it must not consider the procedurally defaulted claim on the merits unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)).

### 2. Application

The state appellate court refused to address the merits of claims three and four, dismissed Petitioner's Rule 26(B) application due to his failure to comply with Rule 26(B)(2)(d), and required him to submit a sworn statement:

> [A]n application to reopen must contain "[a] sworn statement of the basis for the claim that appellate counsel's representation was deficient with respect to the assignments of error or arguments raised * * * and the manner in which the deficiency prejudicially affected the outcome of the appeal." App.R. 26(B)(2)(d); *see State v. Lechner*, 72 Ohio St.3d 374 (1995) (the sworn statement required by

App.R. 26(B)(2)(d) is mandatory).  The sworn statement "may include citations to applicable authorities and references to the record."  App.R. 26(B)(2)(d).

Fox has failed to comply with the sworn statement requirement set forth in App.R. 26(B)(2)(d).  Although Fox has submitted an affidavit in support of his application, the affidavit does not detail either the basis for his claim that his appellate counsel was deficient or how that deficiency prejudiced him.  Lacking the specific information required under the rule, Fox's affidavit is insufficient.  *State v. Saxton*, 10th Dist. No. 15AP-16 (Sept. 27, 2016) (memorandum decision); *see State v. Franklin* 72 Ohio St.3d 372 (1995) (an affidavit simply swearing to the truth of the allegations of an application to reopen "falls short of the particularity required by the rule").  Because Fox has not complied with App.R. 26(B)(2)(d), we need not address the merits of his application to reopen as that failure independently warrants the denial of the application.  *State v. Dingess*, 10th Dist. No. 10AP-848m 2013-Ohio-801, ¶ 13.

Accordingly, we deny Fox's application to reopen his appeal.

(*Memorandum Decision*, Doc. 4, PAGEID # 262-3).

Time and again, District Courts have held that a petitioner's failure to comply with Rule 26(B)(2)(d) results in procedural default of a claim.  *See Jackson v. Sloan,* No. 1:17-cv-01081, 2019 WL 2234597, at *8–9 (N.D. Ohio April 24, 2019) ("Petitioner's failure to comply with Ohio App. R. 26(B)(2)(d), and the state appellate court's enforcement of the procedural rule, results in a procedural default foreclosing consideration of any grounds for relief that Petitioner attempted to raise therein.") (citations omitted); *see also Burke v. Turner*, No. 2:16-cv-01076, 2017 WL 5157701, at *4 (S.D. Ohio Nov. 7, 2017) (citing *Gooden v. Bradshaw*, No. 5:12-cv-2139, 2014 WL 4245951, at *10 (N.D. Ohio Aug. 25, 2014); *Belcher v. Smith*, No. 1:09-cv-627, 2010 WL 256501, at *5–6 (N.D. Ohio Jan. 21, 2010)).

Petitioner argues that that the state appellate court erroneously or vindictively enforced the sworn statement requirement of Rule 26(B)(2)(d), because it did not want to address his claim. (*Reply*, Doc. 19, PAGEID # 1154-55).  This assertion has no record support, and the Undersigned rejects it.

Petitioner may still secure review of this claim on the merits if he demonstrates cause for his failure to follow the state procedural rules, as well as actual prejudice from the constitutional violation that he alleges. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[,] '. . . some objective factor external to the defense [that] impeded . . . efforts to comply with the State's procedural rule.'" *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). It is Petitioner's burden to show cause and prejudice. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (citing *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (internal citation omitted)). A petitioner's *pro se* status, ignorance of the law, or ignorance of procedural requirements are insufficient bases to excuse a procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir.), *cert. denied*, 543 U.S. 989 (2004). Instead, in order to establish cause, a petitioner "must present a substantial reason that is external to himself and cannot be fairly attributed to him." *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007), *cert. denied sub nom. Hartman v. Bobby*, 554 U.S. 924 (2008). Petitioner has failed to establish cause for his procedural default.

Likewise, Petitioner has failed to establish that his claims may avoid the procedural bar under the actual innocence exception. The United States Supreme Court has held that a claim of actual innocence may be raised "to avoid a procedural bar to the consideration of the merits of [the petitioner's] constitutional claims." *Schlup v. Delo*, 513 U.S. 298, 326–27 (1995). "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray*, 477 U.S. at 496. In *Schlup*, the Supreme Court held that a credible showing of actual innocence was sufficient to enable a court to reach the merits of

an otherwise procedurally-barred habeas petition. *Schlup*, 513 U.S. at 317. The actual innocence claim in *Schlup* is "'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Id*. at 315 (quoting *Herrera v. Collins,* 506 U. S. 390, 404 (1993)). Nothing in the record shows that Petitioner can satisfy this standard, and the actual innocence exception does not operate to save his otherwise procedurally defaulted claims.

## VI.  RECOMMENDED DISPOSITION

For the foregoing reasons it is **RECOMMEND** that this action be **DISMISSED**.

### Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

Date:  January 10, 2020                          /s/ Kimberly A. Jolson
                                                 KIMBERLY A. JOLSON
                                                 UNITED STATES MAGISTRATE JUDGE